IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| VERSO CORPORATION, et al., | : | |
| Plaintiffs, | | |
| v. | : | |
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC, et al., | : | Case No. 3:19-cv-0006<br>JUDGE WALTER H. RICE |
| Defendants. | | |

---

DECISION AND ENTRY SUSTAINING MOTION FOR RECONSIDERATION OF DEFENDANT UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC ("USW") (DOC. #93); USW TO OBTAIN CONSENT OF RETIREES BEFORE TAKING GRIEVANCES TO ARBITRATION; FURTHER PROCEEDINGS STAYED PENDING OUTCOME OF ARBITRATION; COUNSEL FOR USW TO NOTIFY THE COURT WITHIN FIVE BUSINESS DAYS OF THE ARBITRATOR'S DECISION; CONFERENCE CALL TO DETERMINE PROCEDURES TO NOTIFY RETIREES AND TO OBTAIN CONSENT

---

This matter is before the Court on a Motion for Reconsideration ("Motion"), Doc. #93, filed by Defendant, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC's ("USW" or "Defendant"). USW seeks reconsideration of this Court's March 27, 2020, Decision and Entry ("Decision and Entry"), Doc. #91,

overruling its Motion to Compel Labor Arbitration ("Motion to Compel Arbitration"), Doc. #44.  Plaintiffs filed a response, Doc. #95, and USW filed a reply, Doc. #96.  The parties have also filed a Notice of Supplemental Authority, Response and Reply, Doc. ##98, 99 and 101, respectively, concerning a recently unpublished decision by the Sixth Circuit, *USW v. LLFlex*, --Fed.Appx--, No. 19-5464, 2021 WL 1123301, (6th Cir. March 24, 2021).

For the reasons that follow, including an analysis of *LLFlex*, the Court is convinced that its initial Decision and Entry is erroneous and sustains the Motion, Doc. #93, subject to USW obtaining the consent of the retirees before taking the grievances to arbitration.  The remainder of this case is stayed pending the outcome of the arbitration.  Counsel for USW is ordered to notify the Court of the arbitrator's decision within five business days of receipt.

**I.   Background and Procedural History**

The Court's filing of March 27, 2020, sets forth the relevant facts and procedural history and will not be repeated in detail herein.  In general, Plaintiffs Verso Corporation ("Verso")[1] and Verso Corporation Health and Welfare Benefit Plan ("Verso Benefit Plan"), an ERISA benefit plan (collectively, "Plaintiffs" or

---

[1] Verso acquired NewPage Holdings, Inc., ("NewPage"), in January 2015, including NewPage subsidiaries. The subsidiaries acquired and their respective mills are: (1) Escanaba Paper Company and the "Escanaba Mill," located in Michigan; (2) Luke Paper Company and the "Luke Mill," located in Maryland; and (3) NewPage Wisconsin Systems, Inc., and the "Central Wisconsin Mill," located in Wisconsin.

2

"Verso"), announced in August 2017, the elimination of certain healthcare benefits for union-represented employees who retired prior to age 65 from Verso, or one of its predecessors, between December 21, 2012, and December 31, 2017.[2] Their Complaint, which included class action allegations, sought a declaratory judgment that Verso's elimination of retiree healthcare benefits did not violate the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Doc. #1, PageID##4-6. It named six unions, including USW, and 12 retired individuals from Verso/NewPage as Defendants. In response to the Complaint, five separate motions to dismiss were filed, Doc. ##40, 41, 42, 43 and 82, and USW filed a Motion to Compel Arbitration, Doc. #44. As a result of voluntary dismissals, Doc. ##46 and 94, and the Court's Decision and Entry sustaining the five motions to dismiss and overruling USW's Motion to Compel Arbitration, Doc. #91, only USW and two other unions[3] remain as Defendants.

USW requests reconsideration of the Court's denial of its Motion to Compel Arbitration. It contends that it is a party, along with Verso, to the 2012 Master

---

[2] The Complaint refers to this as the Pre-65 Retiree Medical Plan. It provided healthcare coverage, as well as a company contribution towards healthcare coverage (or a company contribution towards a premium reimbursement account for retirees to pay for coverage under a non-company healthcare plan), up to age 65 or until eligible for Medicare. Doc. #1, PageID#13.

[3] Answers were filed by the International Brotherhood of Teamsters, Doc. #27, and the International Association of Machinists and Aerospace Workers, AFL-CIO-CLC, Doc. #39.

collective bargaining agreement ("Master CBA"), "governing the three USW-represented bargaining units to the separate local CBAs setting terms specific to each plant." Doc. #93, PageID#2073-74. USW argues that the Master CBA makes all contract disputes subject to the "arbitration processes" of the local CBAs at the mills in Wisconsin, Michigan and Maryland. Doc. #1-2, PageID#30; Doc. #1-8, PageID#395; Doc. #1-3, PageID#71; and Doc. #1-6, PageID#208. The following are the "arbitration processes" from each of the three local USW-Verso CBAs:

> (1) Wisconsin, Central Wisconsin Mill:
>
> Section 22. Grievance Procedure
> Definition of Grievance – for the purpose of this Agreement the term "grievance" means any dispute with the Company initiated by the employee and/or the Union concerning the effect, interpretation, application, claim of breach, or violation of this Agreement.

Doc. #1-8, PageID#395

> (2) Michigan, Escanaba Mill:
>
> Article 25. Grievance and Arbitration Procedure.
> Section 4. The Procedure
> The Parties recognize the following system for the settlement of all complaints and grievances involving the interpretation of or compliance with this Agreement.

Doc.# 1-3, PageID#71

> (3) Maryland, Luke Mill:
>
> Article XVI Grievance and Arbitration
> Section 1: Issues subject to the Grievance Procedure are differences arising out of the interpretation, application or alleged violation of any provision of this Agreement.

Doc. #1-6, PageID#208.

Each of the above-cited local CBA procedures requires that certain "steps" in the grievance process be followed before the final step of arbitration can occur. Doc. #1-8, PageID#395, Doc. #1-3, PageID#71 and Doc.#1-6, PageID#208. The grievance process steps in the local CBAs have several references to participation by an "aggrieved employee and their union steward," Doc. #1-3, PageID#71, "the aggrieved employee's immediate foreman," Doc. #1-6, PageID#209, and the "supervisor whose action gave rise to the grievance." Doc. #1-8, PageID#397.[4] None of the grievance procedures in the local CBAs reference a "retiree."

Following Verso's August 2017 announcement, USW filed grievances for "about 178 employees who retired under the then-in-force" 2012 Master CBA. *Id.*, PageID#2070; Doc. #1, PageID#15.

## I. Motions for Reconsideration

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. Motions for reconsideration are often treated as motions to

---

[4] The Wisconsin local CBA requires that "[G]rievances are to be settled in the following steps:" Step 1, referencing participation by the "employee's immediate supervisor," Step 2, "the supervisor whose direct action gave rise to the grievance" and Step 3 a conference including "an Employee Relations representative from the Human Resources Department." Doc. #1-8, PageID#396-97. "Step 1" in the Michigan local CBA requires the participation of the "aggrieved employee and their union steward" and the "aggrieved employee's immediate foreman," with arbitration occurring "[I]n the event the grievance shall not have been satisfactorily settled under the preceding procedures. . ." Doc. #1-3, PageID#71-72. The Maryland local CBA has three steps involving the "aggrieved employee" or the "grievant" with arbitration occurring at the fourth step and "initiated within thirty (30) days following receipt of the Company's decision at Step Three. . ." Doc. #1-6, PageID#210.

5

alter or amend a judgment under Federal Rule of Civil Procedure 59(e), if filed within 28 days after the entry of judgment. In this case, however, because no final judgment has been entered, Rule 59(e) is inapplicable. *See Russell v. GTE Gov't Sys. Corp.*, 141 F. App'x 429, 436 (6th Cir. 2005) (holding that because there was no final judgment when the court entertained the motion for reconsideration, Rule 59(e) did not apply).

Nevertheless, "[d]istrict courts have authority both under common law and [Federal Rule of Civil Procedure] 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). See also *Am. Civil Liberties Union of Ky. v. McCreary Cty., Ky.*, 607 F.3d 439, 450 (6th Cir. 2010) (noting that where the district court has not yet entered final judgment, it is "free to reconsider or reverse its decision for any reason.").

Typically, however, courts will reconsider an interlocutory order only when there is "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (quotation omitted). *See also Northeast Ohio Coalition for Homeless v. Brunner*, 652 F. Supp. 2d 871, 877 (S.D. Ohio 2009) ("Motions for reconsideration are not intended to re-litigate issues previously considered by the Court or to present evidence that could have been raised earlier.").

6

## II. Discussion

USW's motion to compel arbitration is construed as a motion to dismiss under Rule 12(b)(6). *Teamsters Local Union 480 v. United Parcel Service, Inc.*, 748 F.3d 281, 286 (6th Cir. 2014) (failing to exhaust the internal grievance process under the CBA is a 12(b)(6) claim). Accordingly, the evidence will be construed most strongly in favor of the nonmoving party, Verso.

USW argues that the Court's decision overruling its motion to compel arbitration, Doc. #91, is contrary to national labor policy and Sixth Circuit authority, primarily *Cleveland Electric v. UWU*, 440 F.3d 809, 818 (6th Cir. 2006), and *USW v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 281-282 (6th Cir. 2007). This Defendant further asserts that none of the local CBAs exclude retiree healthcare disputes from arbitration and that the healthcare rights of the 178 retirees it represents "vested when they were employees." Doc. #91, PageID#2076.

In response, Verso argues that arbitration is a matter of contract and "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that* dispute." *Granite Rock v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297, 130 S.Ct. 2847 (2010) (emphasis in original). Verso further contends that prior to engaging in arbitration, the local CBAs require that a "grievance procedure" be followed. It contends that this procedure in the local CBAs pertains exclusively to disputes involving employees and makes no mention of retirees. Because retirees are not employees, *Allied Chemical & Alkali Workers, Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 159, 92 S.Ct. 383

7

(1971) ("The ordinary meaning of 'employee' does not include retired workers."), USW has no right to compel arbitration. Finally, Verso asserts that USW 's Motion is improper, because it improperly raises for the first time that the healthcare benefits vested when the retirees were employees. See *Dayton Veterans Residences Limited Partnership v. Dayton Metropolitan Housing Authority*, Case No. 3:16-cv-466, 2019 WL 5956543, at *2 (S.D. Ohio Nov. 13, 2019) ("It is well-settled that 'parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued.'") (quoting *Roger Miller Music, Inc. v. Sony/ATV Publ'g*, 477 F.3d 383, 395 (6th Cir. 2007)).[5]

Although "national labor policy favors arbitration," *United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir.2007), the Supreme Court in *Granite Rock* rejected the assertion that policy considerations require arbitration of labor disputes where evidence of the parties' agreement to arbitrate the dispute in question is lacking. *Id.* at 303 ("Nor have we held that courts may use policy considerations as a substitute for party agreement."). Instead, arbitration is compelled only after it is determined that the parties' arbitration

---

[5] Again, in this matter, no final judgment has been entered. The instant motion seeks reconsideration of an interlocutory order.

8

agreement has been validly formed, that it covers the dispute in question and is legally enforceable. *Id.* at 303.[6]

In this case, the dispute is not the formation of the agreements to arbitrate, but whether they cover the Union's grievances, filed on behalf of retirees, over the elimination of Verso's Pre-65 Retiree Medical Plan. To determine this issue, and because "arbitration is a matter of consent," *Litton Financial Printing Division v. NLRB*, 501 U.S. 190, 201, 111 S.Ct. 2215 (1991), the Court must apply basic principles of contract law and review the arbitration provisions to determine the intent of the parties. *M & G Polymers USA, LLC v. Tackett*, 574 U.S.427, 434, 135 S.Ct. 926(2015). The "presumption of arbitrability" applies only if there is "a validly formed and enforceable arbitration agreement" that is "ambiguous about whether it covers the dispute at hand." *Granite Rock*, 561 U.S. at 301(citing *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 651-652, 106 S.Ct. 1415 (1986)). In such a case, arbitration is ordered "only where the presumption [of arbitrability] is not rebutted."

Applying these principles, the Court analyzes the Sixth Circuit authority cited as controlling by USW, primarily *Cleveland Electric v. UWU*, 440 F.3d 809, 818 (6th Cir. 2006) and *USW v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 281-282

---

[6] The Court emphasized that the "cornerstone" of the framework announced in the *Steelworkers Trilogy* for deciding arbitrability disputes in LMRA cases is "the rule that arbitration is strictly a matter of consent—and thus that courts must typically decide any questions concerning the formation or scope of an arbitration agreement before ordering parties to comply with it. . ." *Id.* at n.6.

9

(6th Cir. 2007). In *Cleveland Electric,* the union filed a grievance on behalf of employees and retirees concerning a change to health benefits. At arbitration, the employer argued that the grievance was not arbitrable with respect to the retirees, because they were not employees covered by the CBA. The Union did not argue that the arbitrator lacked the authority to decide the issue of arbitrability. In affirming the decision of the District Court, the Court of Appeals held that the employer waived the issue of whether the arbitrator had the power to decide the arbitrability of the grievance and, further, held that "the presumption of arbitrability applies to disputes over retirees' benefits, if the parties have contracted for such benefits in their collective bargaining agreement and if there is nothing in the agreement that specifically excludes the dispute from arbitration." *Cleveland Electric*, 440 F.3d at 816. Finding "no forceful evidence of a purpose to exclude the claim from arbitration," the Court concluded that the arbitrator's determination would stand. The Court noted that "the presumption of arbitrability is particularly applicable where the arbitration clause provides for arbitration of any controversy involving the interpretation of the CBA." *Id.*, 814. In rejecting the employer's argument that the retirees are not part of the collective bargaining unit and that the grievance procedures does not apply to them, the Sixth Circuit, citing to *Pittsburgh Plate Glass Co.*, 404 U.S. at 159, stated that, "once these bargained-for benefits are vested, retired workers may have contract rights under the collective bargaining agreement which they could enforce pursuant to § 301 of the Labor Management Relations Act if the benefits are

changed. *Cleveland Electric*, 440 F.3d at 816 (citing *Pittsburgh Plate Glass Co.*, 404 U.S. at 181, n. 20). The Court also affirmed the District Court's holding requiring the Union to obtain the consent of the retirees before taking the grievance to arbitration, since it protects the retirees from losing their rights to pursue claims, if the Union obtains an unfavorable decision. This consent requirement, the Court stated, also protects the employer if the union is not authorized to act on behalf of the retiree. *Id*. at 817. The nature and extent of the consent requirement would be set by the arbitrator. *Id*. at 818.

The Court has also considered *Cooper Tire & Rubber. Cooper,* which, unlike this case, involved a CBA, side agreements that included arbitration clauses and "side letters" that limited Cooper's annual contributions toward retiree healthcare benefits. The side letters, however, contained no arbitration clauses. Although the side agreements expired before the side letters, the Court found that the side letters were arbitrable holding that "if the parties wish to restrict the CBA's arbitration clause from applying to side agreements, they can provide for such within the language of the CBA*." Cooper*, 474 F.3d at 279. The Sixth Circuit also noted that the arbitration clause in the Agreement was broadly written so as to apply to "any dispute . . . as to the interpretation or application of this Agreement."

Recently, in *USW v. LLFlex*, *supra*, the Sixth Circuit examined whether arbitration could be compelled when an employer changed retiree healthcare benefits and refused to arbitrate a grievance filed by the union on behalf of the

11

retirees. In affirming the holding that the dispute was not arbitrable, the Court agreed with the district court that the CBA contained a "narrowly written arbitration clause" and that health care benefits were not "within the CBA's substantive scope." Additionally, and as is true in this case, the CBA contained a grievance process that did not include retirees.

> Third, the CBA's four-step grievance procedure—of which the arbitration clause is a part—is incompatible with the grievance at issue in this case. That procedure provides four escalating steps to 'any employee who feels that he/she has a just grievance,' from the employee's immediate supervisor (Step 1), to the Manufacturing or Plant Manager and grievance committee (Step 2), to the Plant Employee Relations Manager (Step 3), and then to arbitration (Step 4).

*Id.*, at *4.

Notwithstanding Verso's arguments, including that the grievance process in each of the three local CBAs does not mention "retirees" and only mentions "employees," the fact remains that USW is a party to the Master CBAs's arbitration provisions and the language in these agreements is broadly written to include: (1) "any dispute. . .initiated by the employee and/or the Union;" (2) "all complaints and grievances involving the interpretation of or compliance with this Agreement;" and (3)"differences arising out of the interpretation, application or alleged violation of any provision of this Agreement." The CBA in *LLFlex* specifically limited arbitration to disputes concerning working conditions, discharges, minority rights, lay-offs and re-employment. Additionally, healthcare benefits, as

12

admitted by Verso in in its Complaint, and unlike *LLFlex*, are within the "substantive scope" of the three CBAs. Doc. #1, PageID##12-14; *LLFlex*, at *3. For these reasons, the Court concludes that "the presumption of arbitrability applies" and there is no "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" to overcome this presumption. *Granite Rock*, 561 U.S. at 314. (quoting *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 650, 106 S.Ct. 1415 (1986)).

Although the grievances filed by USW concerning Verso's elimination of the Pre-65 Retiree Medical Plan must be arbitrated, USW must demonstrate that the approximately 178 retirees who retired under the Master CBA, Doc. #93, PageID#2070, consent to the Union's representation at the arbitration. *Cleveland Electric*, 440 F.3d at 817 (citing *Rossetto v. Pabst Brewing Co., Inc.*, 128 F.3d 538, 541 (7th Cir.1997)). A retired worker is neither an employee of a company nor a member of a collective bargaining unit. *Id.* at 540 (citing *Pittsburgh Plate Glass Co., Chem. Div.*, 404 U.S. at 176). "[A]ny right [the union] has to pursue arbitration of the retirees' grievance must come from the retirees." *Pabst*, 128 F.3d at 540. The arbitrator must determine initially whether such consent has been obtained and will determine the "nature and extent of the consent requirement." *Cleveland Electric*, 440 F.3d at 818.

## III. Conclusion

For the reasons set forth above, the Motion for Reconsideration, Doc. #93, is SUSTAINED, subject to USW demonstrating to the arbitrator, before taking the grievances filed by USW to the arbitration, that the retirees have consented to USW's representation. If, and only if, such consent is shown, the claims of the retirees are arbitrable.

All further proceedings of this case are stayed pending the outcome of the arbitration. Counsel for USW is ordered to notify the Court of the arbitrator's final decision within five business days of receipt of same.

Counsel of record will note that a conference call with the Court is scheduled for May 12, 2021, at 5:00 p.m. to discuss the procedures to notify the retirees and to obtain their consent, even though it is the arbitrator who must ultimately determine whether such consent has been obtained, after first determining the nature and extent of the consent requirements.

Date: May 3, 2021

*Walter H. Rice* (tp - per Judge Rice authorization after his review)

WALTER H. RICE
UNITED STATES DISTRICT JUDGE