UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Verso Corporation and Verso Corporation
Health and Welfare Benefit Plan,
     Plaintiffs,

v.

United Steel, Paper and Forestry,
Rubber, Manufacturing, Energy,
Allied Industrial and Service
Workers International Union ("USW") *et. al..*,
     Defendants.

and

Milton J. Anderson, John E. Buckholtz, and Anne M. Anderson
on behalf of themselves and similarly-situated USW retirees, and USW,
     Counter-Plaintiffs,

v.

Verso Corporation,
     Counter-Defendant

_____/

Case No. 3:19-cv-00006
Class Action

United States District Judge
Walter H. Rice

**USW and retirees' agreed-upon motion to: (1) reopen the litigation between USW and Verso; (2) permit filing of the counterclaims by the putative class of retirees; (3) preliminarily certify the putative class of retirees; and (4) approve the Notice of Class Action Settlement and authorize the plaintiffs to circulate the notice to the putative class members**

**Brief in support**

This motion asks the Court to reopen the case to conduct Rule 23 proceedings to effectuate settlement of this retiree pre-65 healthcare dispute.

The Court directed USW and Verso to arbitrate the dispute over pre-65 healthcare, for those retirees who the USW could demonstrate had consented to representation by the USW in such arbitration. (Doc.#103, Op. 11; reaffirmed Doc.# 107).

After the Court denied Verso's reconsideration motion in March 2022 (Doc.#107), the parties engaged in settlement discussions, eventually reaching the $265,000 settlement, agreement attached as **Ex. 1**.

The class representatives and USW, pursuant to Fed. R. Civ. P. 23(e), ask the Court to: **(1)** reopen the class and permit the filing of a retiree counterclaim; **(2)** preliminarily certify the class of retirees **(Ex. 2)**; **(3)** preliminarily approve the parties' settlement **(Ex. 1)**, to resolve this retiree class action; **(4)** approve the proposed Rule 23(c)(2)(A) notice to the class **(Ex. 3)**; and **(5)** to set a Rule 23(e)(2) hearing to determine the fairness, reasonableness, and adequacy of the settlement.

This motion is supported by the attached brief and exhibits 1-5:

1.  Settlement agreement.
2.  A list of 92 class members identified by Verso.
3.  Proposed class notice.
4.  USW retirees' counterclaim.
5.  Proposed order granting this motion.

Verso joins in this motion and consents to the relief sought.

s/John G. Adam
Law Office of John G. Adam, PLLC
423 N. Main Street, Suite 200
Royal Oak, MI 48067
248-354-9650
248-227-9898
jgabrieladam@gmail.com

Stuart M. Israel
Stuart M. Israel, PLLC
28857 Still Valley
Farmington Hills, MI 48334
248-990-0980
smi@smisrael.com

Attorneys for USW and Counter-plaintiffs USW and
putative class representatives Milton J. Anderson,
John E. Buckholtz, and Anne M. Anderson

## BRIEF IN SUPPORT

## TABLE OF CONTENTS

STATEMENT OF ISSUES ........................................................................ ii

STATEMENT OF APPROPRIATE AUTHORITIES ............................................ iii

TABLE OF AUTHORITIES ...................................................................... vi

SUMMARY OF THE CASE ........................................................................1

SUMMARY OF PERTINENT FACTS ...........................................................2

ARGUMENT ..........................................................................................6

    I.    THE $265,000 SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE .......................................................................7

        A.    The Legal Standards....................................................7

        B.    The Standards Applied................................................10

    II.    THE PROPOSED RULE 23(c)(2)(A) NOTICE .................................14

    III.    THE OBJECTION AND HEARING TIMETABLE..........................16

    IV.    CONTEMPLATED PROCEEDINGS AFTER PRELIMINARY APPROVAL ..............................................................16

CONCLUSION .....................................................................................17

## STATEMENT OF ISSUES

**Where** the parties engaged in litigation in the district court and reached settlement agreement (**Ex. 1**), to resolve this litigation over whether Verso had the right to terminate healthcare promised until age 65,

**where**, the settlement agreement provides for Verso to pay $260,000 to be distributed to the 92 retirees (**Ex. 2**) affected by the healthcare termination before the retirees reached age 65 and $5,000 in costs;

**where**, all parties believe that the Agreement is fair and reasonable.

**WHETHER** the Court should:

**(1)** reopen the litigation;

**(2)** permit the filing of the counterclaims by the putative class of retirees (**Ex. 4**);

**(3)** preliminarily certify the putative class of retirees; and

**(4)** approve the Notice of Class Action Settlement (**Ex. 3**) and authorize the Counsel for USW and the class representatives to circulate the notice to the putative class members.

## STATEMENT OF APPROPRIATE AUTHORITIES

1.  A settlement binding on class members requires district court approval "after a hearing" and "on finding" that the settlement "is fair, reasonable, and adequate"; "The parties seeking approval must file a statement identifying any agreement made in connection with the proposal."

    **Fed. R. Civ. P. 23(e)(2) and (3)**

2.  "Class action suits filed in federal court may only be settled with the court's approval. Settlement approval consists of three steps: (1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement. Courts review class settlements to protect the interests of absent parties by ensuring the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

    ***Bailey v. Verso Corp.*, 337 F.R.D. 500, 505 (S.D. Ohio 2021)(citations and quotations omitted)(Newman, J.)(granting preliminary approval)**

    ***Bailey v. Verso Corp.,* 2021 WL 5815727 (S.D. Ohio 2021)(Newman, J.)(granting final approval).**

3.  "The evaluation and approval of a class settlement is committed to the sound discretion of the district court."

    ***IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006)**

4.  In deciding whether a proposed class settlement is "fair, reasonable, and adequate," the district court considers "the federal policy favoring settlement of class actions."

    ***UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007)**

5.    Factors considered by the district court may include: **(1)** the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; **(2)** the risks, expense, and delay of further litigation; **(3**) the judgment of experienced counsel who have competently evaluated the strength of their proofs; **(4)** the amount of discovery completed and the character of the evidence uncovered; **(5)** whether the settlement is fair to the unnamed class members; **(6)** objections raised by class members; **(7)** whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; and **(8)** whether the settlement is consistent with the public interest.

*IUE-CWA v. General Motors*, **238 F.R.D. 583, 594 (E.D. Mich. 2006) (citations omitted)**

*In re Cardizem CD Antitrust Litigation*, **218 F.R.D. 508, 522 (E.D. Mich. 2003) (citations omitted),** *app. dis.* **391 F.3d 812 (6th Cir. 2004),** *cert. den.* **544 U.S. 1049 (2005)**

6.    The district court's preliminary assessment requires "no more than an informal presentation of the parties' proposals to the Court."

*In re Inter-Op Hip Prosthesis Liability Litigation*, **204 F.R.D. 330, 337 (N.D. Ohio 2001)**

7.    Preliminary approval "is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive."

*In re Dun & Bradstreet Credit Services Customer Litigation*, **130 F.R.D. 366, 370 (S.D. Ohio 1990)**

8.    "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval, then the Court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement."

*In re Telectronics Pacing Systems*, 137 F.Supp.2d 985, 1015-1016 (S.D. Ohio 2001) (quoting *Manual for Complex Litigation* §30.44 (2d ed. 1985))

*In re Inter-Op Hip Prosthesis Liability Litigation*, 204 F.R.D. 330, 350 (N.D. Ohio 2001)

9.    The district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."

**Fed. R. Civ. P. 23(e)(1)**

10.   The district court has "virtually complete discretion" to select "the kind of notice to employ in order to inform class members of a settlement hearing."

*Franks v. Kroger Co.*, 649 F.2d 1216, 1222-1223 (6th Cir. 1981)

v

# TABLE OF AUTHORITIES

## CASES

*Bailey v. Verso Corp*., 337 F.R.D. 500, 508 (S.D. Ohio 2021) ...............................5

*Bailey v. Verso Corp.,* 2021 WL 5815727 (S.D. Ohio 2021) ............................6,12

*Bronson v. Board of Education*, 604 F.Supp. 68 (S.D. Ohio 1984) .........................6

*Clark Equip. Co. v. Int'l Union, Allied Indus. Workers,* 803 F.2d 878, *reh. an*d *reh. en banc den*. (6th Cir. 1986) (per curiam), *cert. den*. 480 U.S. 934 (1987)........................................................................................................8,9

*CNH Industrial v. Reese*, 138 S.Ct. 761 (2018)..............................................12

*Franks v. Kroger Co.*, 649 F.2d 1216 (6th Cir. 1981)............................................14

*In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508 (E.D. Mich. 2003), *app. dis.* 391 F.3d 812 (6th Cir. 2004), *cert. den.* 544 U.S. 1049 (2005) ....................................................................................................7,8

I*n re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990)....................................................................................9

I*n re Inter-Op Hip Prosthesis Liability Litigation*, 204 F.R.D. 330 (N.D. Ohio 2001) .....................................................................................................9,10

*In re Telectronics Pacing Systems*, 137 F.Supp.2d 985 (S.D. Ohio 2001) ....... 10,14

*IUE-CWA v. General Motors* 238 F.R.D. 583 (E.D. Mich. 2006) ................. passim

*M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015) ............................. 12,13

*Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306 (1950)....................15

*Myers v. Bricklayers Pension Plan*, 2014 WL 7005193 (S.D. Ohio) (Rice, J.)........v

Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615 (9th Cir. 1982)...............8

*Priddy v. Edelman*, 883 F.2d 438 (6th Cir. 1989) .....................................................7

*Reed v. Rhodes*, 869 F.Supp. 1274 (N.D. Ohio 1994)...............................................6

*Shy v. Navistar Intl. Corp.*, 1993 WL 1318607 (S.D. Ohio 1993)...........................9

*Steiner v. Fruehauf Corp.*, 121 F.R.D. 304 (E.D. Mich. 1988) ................................ 7

*UAW v. General Motors Corp.*, 2005 WL 5416766 (E.D. Mich.) .......................... 15

*UAW v. General Motor*, 497 F.3d 615 (6th Cir. 2007) ................................... *passim*

*UAW v. Kelsey-Hayes Co*., 2015 WL 1906133 (E.D. Mich.) ................................ 13

*UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983), *cert. den.* 465 U.S. 1007 (1984) ..................................................................................... 12

## STATUTES

Class Action Fairness Act (CAFA), 28 U.S.C. §1711, *et seq.* ................ 5, 15,16,17

Declaratory Judgment Act (DJA), 28 U.S.C. §§2201-2202 ..................................... 2

Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1001, *et seq.* ....................................................................................... *passim*

Labor-Management Relations Act (LMRA) Section 301, 29 U.S.C. §185 ........ 2, 13

## RULES

Federal Rule of Civil Procedure 23 ................................................................. *passim*

## OTHER AUTHORITIES

Manual for Complex Litigation §21.632 (4th ed. 2004) ......................................... 9

*Manual for Complex Litigation* §30.44 (2d ed. 1985) .................................... 10, 14

## SUMMARY OF THE CASE

This Court directed USW and Verso to arbitrate the dispute over Verso's termination of pre-65 healthcare with those retirees who consented to the USW's representation at such arbitration. (Doc.#103, Op. 11).

After denying Verso's reconsideration motion in March 2022 (Doc.#107), the parties engaged in settlement discussions and reached a mutually-acceptable settlement. This agreement requires Verso to pay the sum of $265,000 (minus costs of $5,000) to USW who shall distribute the proceeds to the class of 92 retirees on a pro rata basis, that is, approximately $2,826.  This payment will cover some of the medical premium expenses incurred by the 92 retirees (their names are attached as **Exhibit 2**),  whose healthcare terminated before age 65.

This motion asks the Court to reopen the case and to conduct Rule 23 proceedings contemplating approval of the settlement of this USW retiree healthcare class action as memorialized in the Parties' Settlement Agreement, attached as **Exhibit 1**.

The Parties ask that the Court to reopen the USW case and to preliminarily certify the class and preliminarily approve the settlement.  In addition, we ask that the Court approve for mail distribution of the proposed Rule 23(c)(2)(A) notice attached as **Exhibit 3**.  The Parties ask that the Court set a Rule 23(e)(5) objection

deadline. Finally, the Parties ask that the Court schedule a Rule 23(e)(2) fairness hearing for consideration of final settlement approval.

## SUMMARY OF PERTINENT FACTS

1. **Lawsuit**. In 2019, Verso invoked the Declaratory Judgment Act (DJA), 28 U.S.C. §§2201-2202; the Labor-Management Relations Act (LMRA), 29 U.S.C. §185(a); and Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1132, to seek a declaration that Verso's decision to end retirement healthcare for former USW-represented workers who retired from Verso or from one of Verso's predecessors between December 21, 2012 and December 31, 2017. This action involves Verso's discontinuation of that healthcare and premium reimbursement option ("PRO") for retired workers under the age of 65 ("pre-65 retirees") in 2018. The affected retirees had worked in USW-represented collective-bargaining units in the Escanaba, Michigan paper mill, the Luke, Maryland paper mill, and various Wisconsin paper mills identified by Verso in its complaint (Doc.# 1, complaint and complaint exhibits). See Doc#1-2 (master CBA); Doc#1-3 (Michigan CBA); D1-6 (Maryland CBA); and Doc#1-8 (Wisconsin CBA).

2. **Pre-65 USW retirees**. According to Verso, in 2018 there were 92 USW retirees who had their healthcare or PRO terminated. 53 of the 92 retirees were receiving from Verso the traditional medical plan. 39 of the 92 retirees were receiving payments from Verso under the PRO. Verso has confirmed the number

who suffered a termination of the healthcare and PRO is 92, reflected in Ex. 2. The initial number was higher, but upon further review of the CBAs and plan criteria for participation, retirees who were ineligible for the the pre-65 healthcare or PRO benefit were initially included.

3.    **CBAs promise pre-65 healthcare**. The retiree healthcare of the USW retirees is governed by a "master" collective bargaining agreement ("CBA") and "local" USW CBAs between Verso and individual unions, governing bargaining units at Verso paper mills in Michigan, Maryland, and Wisconsin. (Doc.# 1, ¶¶1-2, 27-34, and *passim*). See Doc.#1-2 (master CBA); Doc#1-3 (Michigan CBA); Doc#1-6 (Maryland CBA); and Doc#1-8 (Wisconsin CBA).

4.    The following are the criteria for Pre-65 Healthcare eligibility at the various mills:

> **A. Central Wisconsin.** Two eligibility categories based on whether the retiree retired before January 1, 2014, or on or after January 1, 2014: Category 1 (Retired Before January 1, 2014) were eligible if they were hired before July 1, 2006, retired at age 55 or later, and had 10 years of service at time of retirement. Category 2 (Retired On or After January 1, 2014) were eligible if they were hired before July 1, 2006, retired at age 62 or later, and had 12 years of service at time of retirement.
> **B. Escanaba**. Eligible if hired before January 1, 2005; retired between age 62 – 65; and retired with 12 years of service.
> **C. Luke**. Eligible if retired between the ages of 62 – 65.

5.    **Arbitration**. USW moved to compel arbitration of the pre-65 retiree healthcare claims. (Doc.#44). This Court at first denied in 2020 (Doc.#91) but then on reconsideration in 2021, directed USW and Verso to arbitrate the dispute over

Verso's termination of pre-65 healthcare. As part of the arbitration, the Court required written consent from the individual retirees to the USW's representation at any such arbitration. The Court was to be advised of the decision after the arbitrator ruled. (Doc.#103, PgID#2141, 2145).

After denying Verso's reconsideration motion in March 2022 (Doc.#107), the parties engaged in settlement discussions and reached a mutually-acceptable settlement. The Court ordered that "all further proceedings in this case are stayed pending the outcome of the arbitration" with USW counsel to notify the Court of the arbitrator's decision." (Doc.#107, PgID#2205-2206).

6.     **$265,000 Settlement**. Verso agrees to provide a $265,000 lump-sum payment to be distributed to the the 92 USW retiree class members.   The $265,000 (minus $5,000 that will be subtracted for legal costs) will be paid to class members, that is, approximately $2,826 per eligible retiree.  This payment covers some the costs of healthcare insurance replacements or medical expenses incurred after Verso ended the healthcare at the end of 2017.  Verso will pay the funds to  the USW and USW shall distribute the funds to the eligible retirees.

7.      **Rule 23 notice and protections**. To effectuate this settlement, the Parties agreed to Rule 23(b)(2) procedures to ensure due process and for the protection for the class members. Such protections will require the Court to reopen the case, allow

the retirees to file a counterclaim (**Exhibit 4**) and approve the settlement and notice

to the USW retiree class members.

8.     **Class certification**. The Parties stipulate to the following class:

> All pre-65 retirees who retired from Verso and who worked in USW-represented collective-bargaining units at the Escanaba, Michigan paper mill, the Luke, Maryland paper mill, and Central Wisconsin paper mills who were affected by Verso's 2018 termination of the pre-65 retiree healthcare or premium reimbursement option. A list of the individuals the Parties have agreed comprise this class is attached hereto as **Exhibit 2** (these persons are referred to as "Class Members").

9.     **Requested action**. We ask the Court **(1)** reopen the case; **(2)** allowing filing

of a retiree counterclaim, attached as **Exhibit 4**, **(3)** to preliminary certify the class;

**(4)** for preliminary approval of the settlement pursuant to Rule 23(e); **(5)** for approval

of the proposed notice **(Exhibit 3)**, for distribution to all class members, to the

Attorney General of the United States, and to all state attorneys general entitled to

notice under the Class Action Fairness Act (CAFA), 28 U.S.C. §1711, *et seq*.; **(6)** to

set an objection deadline; and **(7)** schedule a fairness hearing pursuant to Rule

23(e)(1), (2), and (5) and to otherwise conduct any Rule 23 proceedings necessary

to final approval.

This is similar to the Rule 23 procedure involving the class action settlement

approved by U.S. District Judge Michael Newman in *Bailey v. Verso Corp*., 337

F.R.D. 500, 508 (S.D. Ohio 2021) (granting joint motion for preliminary settlement

approval and certifying a class of USW retirees) and *Bailey v. Verso Corp*., 2021 WL 5815727 (S.D. Ohio 2021) (granting final approval).

**10.**     **Consent and Rule 23(e)(3) statement**.  All parties consent to the requested relief and all represent that the Agreement reflects all agreements between and among the parties "made in connection with" the resolution of this class action lawsuit.

## ARGUMENT

The evaluation and approval of a class action settlement is committed to "the sound discretion of the district court."  *IUE-CWA v. General Motors*, 238 F.R.D. 583, 594 (E.D. Mich. 2006).  Approval involves four steps.  **First**, the court must certify the class and preliminarily approve the proposed settlement and notice.  Rule 23(e).  **Second**, class members must be given court-approved "notice in a reasonable manner."  Rule 23(e)(1).  **Third**, class members must be given an opportunity to object.  Rule 23(e)(5).  **Fourth**, the court must determine whether the proposed settlement is "fair, reasonable, and adequate."  Rule 23(e)(1)-(2) and  *Verso*, 337 F.R.D. at 505.

See also *Reed v. Rhodes*, 869 F.Supp. 1274, 1278 (N.D. Ohio 1994) and *Bronson v. Board of Education*, 604 F.Supp. 68, 71 (S.D. Ohio 1984).

In this motion, as to Rule 23, we ask the Court to **(1)** certify the class and preliminarily approve the settlement; **(2)** approve the proposed form and method of notice; **(3)** set an objection deadline; and **(4)** schedule a fairness hearing.

## I. THE $265,000 SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A. The Legal Standards

District court assessment must consider "the federal policy favoring settlement of class actions." *UAW v. General Motors,* 497 F.3d 615, 632 (6th Cir. 2007). See **(1)** *Verso*, 337 F.R.D. at 506 ("Settlement of this matter is likely to save litigation costs and conserve judicial resources"; "This settlement is particularly beneficial for class members because it guarantees them a pay-out without the corresponding uncertainty of dispositive motion practice"); **(2)** *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (citations omitted) ("there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources") and **(3)** *Steiner v. Fruehauf Corp.*, 121 F.R.D. 304, 305 (E.D. Mich. 1988), *aff'd sub nom Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) ("case law favors the voluntary settlement of class actions").

Fostering federal policy, assessment "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties and that the

settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers*, 803 F.2d 878, 880, *reh. and reh. en banc den.* (6th Cir. 1986) (per curiam), *cert. den.* 480 U.S. 934 (1987), quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982).

"[A]bsent fraud or collusion and evidence that the settlement on a whole was not fair, reasonable and adequate, [the] court does not second guess such a settlement." *Clark Equip.*, 803 F.2d at 880.

In assessing fairness, adequacy, and reasonableness of class action settlements, district courts may consider:

> **(a)** the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; **(b)** the risks, expense, and delay of further litigation; **(c)** the judgment of experienced counsel who have competently evaluated the strength of their proofs; **(d)** the amount of discovery completed and the character of the evidence uncovered; **(e)** whether the settlement is fair to the unnamed class members; **(f)** objections raised by class members; **(g)** whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; and **(h)** whether the settlement is consistent with the public interest.

*Cardizem*, 218 F.R.D. at 522 (citations omitted); *IUE-CWA*, 238 F.R.D. at 594 (citations omitted); *General Motors*, 497 F.3d at 631 (listing similar factors).

Courts "may choose to consider only those factors that are relevant to the settlement and may weigh particular factors according to the demands of the case." *IUE-CWA*, 238 F.R.D. at 594-595.

"It is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, *taken as a whole*, must be fair, adequate and reasonable." *Shy v. Navistar Intl. Corp.*, 1993 WL 1318607 at *2 (S.D. Ohio 1993) (emphasis in original). See *Verso*, 337 F.R.D. at 508 (granting joint motion for preliminary settlement approval and certifying a class of USW retirees).

When "a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair." *In re Inter-Op Hip Prosthesis Liability Litigation*, 204 F.R.D. 330, 350-351 (N.D. Ohio 2001) (internal citations omitted).

Preliminary approval requires "no more than an informal presentation of the parties' proposals to the Court." *Inter-Op Hip*, 204 F.R.D. at 337. Preliminary approval "is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive." *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 370 (S.D. Ohio 1990). Preliminary approval may be based on information already known to the court, supplemented as necessary by briefs, motions, or informal presentations by the parties. *Manual for Complex Litigation* §21.632 (4th ed. 2004).

"If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant

9

preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the Court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement." *In re Telectronics Pacing Systems*, 137 F.Supp.2d 985, 1015-1016 (S.D. Ohio 2001), quoting *Manual for Complex Litigation* §30.44 (2d ed. 1985). Accord: *Inter-Op Hip*, 204 F.R.D. at 350.

### B.    The Standards Applied

Here, the parties' proposed settlement is "the product of serious, informed, non-collusive negotiations," is "fair, reasonable, and adequate," and warrants preliminary approval under the governing legal standards.

**First**, the settlement will resolve substantial disputes between the parties. It will do so in the context of complex and evolving law governing disputes over collectively-bargained retiree benefits.

Here, the settlement will resolve the parties' disputes, end the parties' prolonged litigation and arbitration, provides notice to the class, and eliminate litigation risks for all.

The uncertainties and complexity characteristic of retiree class actions make these cases "particularly" appropriate for settlement. *General Motors*, 497 F.3d at 632 observed: "What makes these settlements particularly sensible, moreover, is

10

that, even if this merits question favored one party over the other, the retirees still would have had ample reason to control the resolution of this dispute through negotiation today rather than litigation tomorrow."

See also *IUE-CWA*, 238 F.R.D. at 596 ("Whatever the relative merits of the parties' positions, there is no such thing as risk-free, expense-free litigation.").

**Second**, a reasonable and certain resolution now is preferable to continued litigation. *IUE-CWA* cited examples of prolonged retiree healthcare lawsuits and observed: "avoiding the delay necessary to litigate the dispute is in all parties' interest." 238 F.R.D. at 596-597. Here, the settlement will end the ongoing litigation expense and uncertainty that began in 2019.

**Third**, the settlement is even-handed. All class members, including the class representatives, are treated alike; no class representative or class member receives preferential treatment. The settlement is, under Rule 23(e), "fair."

**Fourth**, the settlement is the product of intensive litigation and informed negotiation during which both sides vigorously pressed their interests and, ultimately, reached mutually-beneficial compromise.

The parties negotiated at arm's-length. In addition, the parties reached settlement while represented by experienced counsel, also a factor demonstrating fairness, reasonableness, and adequacy. See *IUE-CWA*, 238 F.R.D. at 598-599 (negotiation "process was entirely at arm's length, with each party representing and

11

pursuing its own interests, and exercising independent judgment"; the "judgment of the parties' counsel that the settlement is in the best interest of the settling parties 'is entitled to significant weight, and supports the fairness of the class settlement'").

**Fifth**, while the parties pressed the legal and factual merits of their positions throughout this litigation, they closely monitored the evolving law governing collectively-bargained retiree benefits, developing in the Supreme Court, the Sixth Circuit, and other circuits.

The parties recognize that the legal landscape has become less favorable for retirees following: **(1)** *M&G Polymers v. Tackett*, 574 U.S. 427 (2015), which rejected the principles that guided the Sixth Circuit since *UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983), *cert. den.* 465 U.S. 1007 (1984); **(2)** *CNH Indus. v. Reese*, 138 S.Ct. 761 (2018); and **(3)** post-*Reese* Sixth Circuit decisions, such as *Fletcher v. Honeywell Int'l.*, 892 F.3d 217 (6th Cir.), *cert den.* 139 S.Ct. 493 (2018)(reversing Judge Rice's ruling in the retirees' favor in light of major changes in law following *Tackett*, *Reese,* and post-*Reese* Sixth Circuit rulings).

The parties and their counsel believe their Agreement is "fair, reasonable, and adequate." See *Bailey v. Verso,* 2021 WL 5815727 at *2 (S.D.Ohio, 2021) (granting final approval; "The relief provided to the class members under the settlement is fair, reasonable, and adequate, considering the costs, risks, and delay associated with trial and appeal. The legal landscape has become less favorable for retirees after"

*Tackett*). See also *IUE-CWA*, 238 F.R.D. at 599 ("if the settlement agreement itself is fair, reasonable and adequate, then the court may assume that the negotiations were proper and free of collusion").

Plaintiffs are represented by attorneys with extensive experience litigating ERISA/LMRA retiree healthcare actions. See, *e.g., Verso*, 2021 WL 5815727 at *2 (S.D.Ohio, 2021) (Newman, J.) ("Class counsel John G. Adam and Stuart M. Israel are qualified under Rule 23(g) and have adequately and admirably represented class members' interests"); and *UAW v. Kelsey-Hayes Co.*, 2015 WL 1906133 at *3 (E.D. Mich.) (retirees represented by qualified counsel—Adam and Israel—"with pertinent experience prosecuting LMRA/ERISA retiree healthcare class action litigation").

Plaintiffs' counsel's work included factual investigation, analysis of CBAs and bargaining history, and legal research and analysis involving ERISA, LMRA, retiree benefits, labor law and contracts, evidence, remedies, and procedural issues, as reflected in the retirees' briefs and other filings. (See, *e.g.*, Doc. # 38, 93,96, 98, 105).

———————————————

These circumstances, we believe, satisfy the salient criteria and demonstrate that the settlement is likely to be approved as "fair, reasonable, and adequate." Accordingly, we ask that the Court **(1)** reopen the case and permit the filing of the

class action counterclaim; **(2)** preliminarily approve the class and the settlement; **(3)** approve the proposed notice; **(4)** set a deadline for any Rule 23(e)(5) objections; and **(5)** set a Rule 23(e)(2) fairness hearing to consider final approval and resolution of this lawsuit.

See *In re Telectronics*, 137 F.Supp.2d at 1015-1016 ("If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations...and falls with[in] the range of possible approval, then the Court should direct that notice be given to the class members" setting a fairness hearing).

## II. THE PROPOSED RULE 23(c)(2)(A) NOTICE

After preliminary determination that a proposed settlement is fair, reasonable, and adequate, a district court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(e)(1).

**A.** District courts have "virtually complete discretion" in determining what constitutes reasonable notice. *Franks v. Kroger Co.*, 649 F.2d 1216, 1222-1223 (6th Cir. 1981) (the district court's broad discretion is "well settled"). See *In re Telectronics*, 137 F.Supp.2d at 1015-1016 (quoting *Manual for Complex Litigation* §30.44 (2d ed. 1985)) ("If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval, then the Court should direct that

14

notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.").

**B.** The notice "should be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *General Motors*, 497 F.3d at 629, quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). What "the notice must do is 'fairly apprise the...class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests." *General Motors*, 497 F.3d at 630 (citations omitted).

**C.** Here, the proposed notice describes the litigation, explains the Agreement, addresses the reasons why settlement is beneficial, notifies class members of their right to object and appear at the fairness hearing, and summarizes the Rule 23 process. See **Exhibit 3**. After Court approval, defendants will send the notice by first-class mail to each retiree who is a class member.

In addition, defendant will provide the notice to the U.S. Attorney General and various state attorneys general as required by CAFA, 28 U.S.C. §1711, *et seq*.

**D.** The parties believe the proposed notice form, content, and distribution method comply with Rule 23. See *UAW v. General Motors Corp.*, 2005 WL 5416766 (E.D. Mich.) (approving first-class mail notice).

We ask that the Court approve the notice, with authority afforded the parties to make **necessary modifications to insert the objection deadline and the fairness hearing time and date** and as otherwise necessary to reflect this Court's directions and ruling on this motion.

## III.   THE OBJECTION AND HEARING TIMETABLE

Rule 23(e)(5) requires that any class member who would be bound by the settlement be given an opportunity to object to the settlement.

To provide that opportunity, we ask that the Court set an objection deadline for a date certain 45 days before the fairness hearing, according to the procedures described in the notice, **Exhibit 3**.  Because of the 90-day notice period afforded attorneys general by CAFA, discussed next, this deadline will ensure that class members have 45 days or more to present objections, if any.

## IV.   CONTEMPLATED   PROCEEDINGS   AFTER   PRELIMINARY APPROVAL

If the Court preliminarily approves the settlement and notice, Defendant USW/Counterclaim Plaintiff USW plans to mail the notice to class members within 30  days of approval.  In addition, Verso will provide the 90-day notice to the Attorney General of the United States and state attorneys general in states where class members reside, as required by CAFA, 28 U.S.C. §1711, *et seq.*, and also do so within 10 days of approval.

16

To accommodate this CAFA timetable, we ask that the Court set the fairness hearing for a date at least 100 days after class certification and preliminary approval of the settlement and notice.

## CONCLUSION

For these reasons, we ask the Court to:

**(1)** reopen the litigation;
**(2)** deemed filed the counterclaims by the putative class of retirees **(Ex. 4)**;
**(3)** preliminarily certify the putative class of retirees; and
**(4)** approve the Notice of Class Action Settlement **(Ex. 3)** and authorizes the Counsel for USW and the class representatives to circulate the notice to the putative class members.

A proposed order granting this motion **(Ex. 5)** will be submitted via PACER.


s/John G. Adam
Law Office of John G. Adam, PLLC
423 N. Main Street, Suite 200
Royal Oak, MI 48067
248-227-9898
jgabrieladam@gmail.com

Stuart M. Israel
Stuart. M. Israel PLLC
28857 Still Valley
Farmington Hills, MI 48334
248-990-0989
smi@smisrael.com

Attorneys for USW putative class representatives Milton J. Anderson, John E. Buckholtz, and Anne M. Anderson

**EXHIBITS 1-5**

1.    Settlement agreement.
2.    A list of 92 class members identified by Verso.
3.    Proposed class notice.
4.    USW retirees' counterclaim.
5.    Proposed order granting this motion.